The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, the ultimate award.
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing and in a Pre-Trial Agreement submitted prior to the initial hearing, as:
 STIPULATIONS
1. The employee is James E. Alexander.
2. The stipulated employers are John Barnes and RW Drywall.
3. The stipulated defendant/employer, John Barnes and RW Drywall, regularly employed three or more employees and were thereby bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the stipulated employers and the employee on the 26th day of April, 1994.
4. April 26, 1994 is the date of injury.
5. The following documents and medical records were stipulated into evidence, subject to the right of either party to depose the medical witnesses pursuant to Industrial Commission order:
 1) Two pages of reports from Mecklenburg County Ambulance Service, dated April 26, 1994.
 2) Twenty pages of medical records from Carolinas Medical Center, dated April 26, 1994 through May 12, 1996.
 3) Eighty-three pages of reports from the Charlotte Institute of Rehabilitation, dated May 4, 1994 through October 3, 1995.
 4) One page of notes from Dr. Samuel J. Chewning, Jr. of the Miller Orthopaedic Clinic, dated April 9, 1994 through March 28, 1995.
 5) Six pages of medical notes from Charlotte Neurosurgical Associates, dated May 27, 1994 to August 29, 1996.
 6) Three pages of medical reports from Carolinas Medical Center, dated January 26, 1996 to March 1, 1996.
 7) Fifty-seven pages of medical records from October 4, 1996 to November 26, 1996.
 ***********
Based upon all of the competent, credible, and convincing evidence of record, the undersigned make the following additional:
 FINDINGS OF FACT
1. The plaintiff was thirty-seven years old at the time of his injury by accident.
2. The plaintiff started to work for John Barnes as a drywall sander on April 26, 1994. At the time plaintiff took the position with John Barnes, he was in the midst of a temporary lay-off from his prior employer. If the position with John Barnes proved to be satisfactory, the plaintiff intended to quit his prior employment and continue working for John Barnes.
3. A drywall sander is paid on a "per board" basis. When proficient, and taking into account seasonal activity levels, a sander could expect to earn on an average of $300.00 per week at the position.
4. At the time plaintiff was injured, John Barnes was acting as a subcontractor for RW Drywall, who in turn was acting as a subcontractor for M/I Homes.
5. At the time plaintiff was injured, John Barnes did not have workers' compensation insurance, nor was he deducting any money from his employee's pay for taxes.
6. At the time plaintiff was injured, RW Drywall was not in possession of a certificate of insurance from John Barnes.
7. RW Drywall initially obtained workers' compensation and contractor's liability insurance from State Farm Insurance Company in June of 1992. The initial policy ran from June 18, 1992 to June 18, 1993. At the end of that policy term, RW Drywall's insurance was provisionally renewed for the policy period June 18, 1993 to June 18, 1994. Because RW Drywall chose to participate in State Farm's monthly payment plan, instead of paying the entire amount due at the beginning of the coverage period, continued insurance coverage was contingent upon RW Drywall's timely payment of monthly premiums.
8. On June 17, 1993, at the request of RW Drywall, Karen Woods, the insurance agent representing State Farm Insurance Company, provided M/I Homes with a certificate of insurance showing the RW Drywall had obtained a policy for workers' compensation insurance from State Farm Insurance Company.
9. The certificate of insurance provided by State Farm made no representations that they would provide any notice to M/I Homes should RW Drywall's insurance policy be canceled prior to the anticipated end of the policy period.
10. RW Drywall's workers' compensation policy was canceled by State Farm for nonpayment of premium effective January 25, 1994.
11. In canceling RW Drywall's workers' compensation policy, State Farm complied with the provisions of N.C.G.S § 97-99(a); and therefore RW Drywall was non-insured on the date of plaintiff's injury.
12. State Farm also notified the North Carolina Rate Bureau of the cancellation of RW Drywall's workers' compensation insurance. This cancellation was valid, was effected with a valid notice, and was not in any way waived by State Farm's prior communications with RW Drywall.
13. Plaintiff's injury occurred when he fell backwards off a flight of stairs, landing approximately 12 to 14 feet below his original position. The plaintiff lost consciousness, and he was taken to Carolinas Medical Center, where he was shown to have a thin right subdural hematoma, vertical fractures of C4 through C6 with a comminuted burst fracture of C5, moderate mid-level cervical spondylosis and extensive posterior ligamentous injury throughout the cervical spine. A halo vest was applied on April 29, 1994, and the plaintiff's care was transferred to Charlotte Institute of Rehabilitation. On June 7, 1994, the plaintiff underwent a posterior right cervical laminectomy and foraminotomy over the C5-6 roots and a replacement of the right front halo pin. These procedures were performed by Dr. Michael Heafner of Charlotte Neurosurgical Associates, P.A., and Dr. Samuel Chewning of the Miller Orthopaedic Clinic in Charlotte, North Carolina. The halo vest was removed at the beginning of August of 1994. In a letter written October 20, 1994, Dr. Heafner stated that the plaintiff would be unable to work because of his cervical fracture for approximately one year from his injury date.
14. Because of a continuing problem with left shoulder dislocation, open reconstruction of his shoulder was suggested, and on October 5, 1994, the plaintiff underwent an open repair with a Bankart reconstruction. This procedure was performed by Dr. Michael Bosse of the Orthopaedic Clinic of Charlotte's Institute of Rehabilitation. On December 8, 1994, Dr. Bosse gave the plaintiff a twenty pound lifting restriction. This restriction was reiterated by Dr. Edward Hanly, Jr., on January 5, 1995.
15. On August 1, 1996, Dr. Heafner stated that the plaintiff was well healed on the C5-6 level, that he had degenerative disease at C3-4, C4-5, C6 with spurs, but no canal stenosis and no instability in flexion. Dr. Heafner indicated that, in his opinion, the plaintiff had healed well from his C5 burst fracture. On January 9, 1997, Dr. Heafner indicated that the plaintiff was at maximum medical improvement and had suffered a 20% permanent partial disability as a result of his injury by accident.
16. In approximately November of 1996, plaintiff obtained a job bagging groceries at Penny's Grocery Store in Charlotte, North Carolina, earning $5.25 per hour and working thirty hours per week. Plaintiff voluntarily left that position to work in the stock room of the same store at $5.50 per hour. After approximately two weeks at the stock room position, plaintiff decided that the stock room job was too strenuous, and he resigned. Plaintiff did not provide any medical documentation showing that the position was outside of his capabilities.
 ***********
Based upon the foregoing findings of fact, the undersigned make the following:
 CONCLUSIONS OF LAW
1. The plaintiff suffered a compensable injury by accident, arising out of and in the course and scope of his employment on April 26, 1994. N.C.G.S. § 97-2(6).
2. As a result of the injury by accident giving rise hereto, plaintiff was temporarily and totally disabled for the period from April 26, 1994 until he returned to work in November of 1996; and he is entitled to receive temporary total disability compensation benefits at the rate of $200.01 per week during said period. N.C.G.S. § 97-29.
3. As the result of the injury of April 26, 1994, plaintiff is entitled to partial incapacity benefits of $95.00 per week from the date he returned to work for a period of not more than 300 weeks from the date of the accident, or alternatively, 60 weeks of permanent partial disability benefits at the rate of $200.01 per week in respect to the 20% disability of his back at his election. N.C.G.S. § 97-30, § 97-31. Plaintiff is not permanently and totally disabled.
4. Since RW Drywall did not obtain a certificate of insurance from John Barnes, John Barnes is not liable for payment of any disability or medical compensation due to plaintiff.
N.C.G.S. § 97-19.
5. Plaintiff's employment with defendant RW Drywall was subject to the Workers' Compensation Act, and plaintiff is therefore entitled to compensation from the non-insured defendant RW Drywall due to plaintiff's injury of April 26, 1994.
N.C.G.S. § 97-19.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned make the following:
 AWARD
1. Plaintiff's claim against John Barnes must, under the law be, and it is hereby DENIED.
2. Plaintiff's claim against RW Drywall must, under the law be, and is hereby deemed COMPENSABLE.
3. Plaintiff's claim against State Farm Insurance Company must, under the law be, and it is hereby DENIED.
4. Defendant RW Drywall shall pay all of the plaintiff's medical expenses incurred which relate to his injury by accident for so long as such treatment is necessary to give relief, effect a cure or tend to lessen plaintiff's period of disability.
5. Defendant RW Drywall shall pay plaintiff temporary total disability at the rate of $200.01 from the time of his injury until he returned to work. The accrued compensation shall be paid to plaintiff in a lump sum, subject to attorney's fees hereinafter approved.
6. Plaintiff may elect between benefits due per N.C.G.S. § 97-30 or § 97-31. If plaintiff elects benefits pursuant of § 97-31, defendant RW Drywall shall pay plaintiff permanent partial disability benefits at the rate of $200.01 per week for a period of 60 weeks. If plaintiff elects benefits under § 97-30, defendant RW Drywall shall pay plaintiff $95.00 per week from and after the date he began work at Penny's Grocery Store for a period not to exceed 300 weeks from the date of the injury.
7. An attorney's fee is hereby approved for counsel for plaintiff in an amount equal to 25% of the accrued benefits and 25% of any amounts received by the plaintiff prospectively. Said sum shall be deducted from the plaintiff's benefits and paid directly to counsel for plaintiff.
8. Defendant RW Drywall shall pay the costs.
It is furthermore ORDERED that this case be REMOVED from the Full Commission docket.
This the ___ day of ________, 1998.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER